UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., <br><br>  Plaintiff, <br><br> v. <br><br> MANUEL GONZALEZ, et al., <br><br>  Defendants. | Case No.  5:16-cv-02284-EJD <br><br> **ORDER GRANTING PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT** <br><br> Re: Dkt. No. 25 |

**I.  INTRODUCTION**

Plaintiff J & J Sports Productions, Inc. ("Plaintiff") is in the business of marketing and licensing commercial exhibitions of pay-per-view prizefight events and secured the domestic commercial exhibition rights to broadcast and sublicense one particular program, namely "The Fight of the Century: Floyd Mayweather, Jr. v. Manny Pacquiao Championship Fight" (the "Event"), which was telecast on May 2, 2015.  In this action, Plaintiff alleges that Defendants Manuel Gonzalez, Glafira Padilla and Luis G. Rodriguez (collectively, "Defendants") illegally intercepted and broadcasted the Event at their restaurant, Los Jarritos.

Federal subject matter jurisdiction arises pursuant to 28 U.S.C. § 1331 and personal jurisdiction arises from service on Defendants in California.  Burnham v. Super. Ct., 495 U.S. 604, 610-11 (1990).  Dkt. Nos. 16-18.  Plaintiff filed the Complaint on April 27, 2016.  Defendants failed to answer and their defaults were entered by the Clerk on September 19, 2016.  Dkt. No. 22.

Plaintiff now applies for entry of default judgment.  Dkt. No. 25.  The court finds this matter suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b). Accordingly, the hearing scheduled for December 1, 2016, will be vacated.  Plaintiff's application will be granted for the reasons explained below.

**II.  BACKGROUND**

In the course of its business, Plaintiff was licensed to exhibit the Event at closed circuit

locations throughout California. Aff. of Joseph M. Gagliardi ("Gagliardi Aff."), Dkt. No. 26, at ¶ 5, Ex. 1. In order for other commercial establishments to broadcast the Event, owners were required to enter into a sublicense agreement with Plaintiff and pay a fee calculated based on the capacity of the establishment. Id. at ¶¶ 6, 8. The sublicense provided commercial establishments the legal and technological ability to publicly exhibit the Event. Id. at ¶ 7.

On May 2, 2015, investigator Jeff Kaplan viewed a broadcast of the Event at Los Jarritos in San Jose, California. Aff. of Jeff Kaplan ("Kaplan Aff."), Dkt. No. 25, at p. 1. Based on Kaplan's observations and apparently subsequent to a confirming review of its own records, Plaintiff alleges that Defendant displayed the Event without obtaining the proper sublicense. Gagliardi Aff., at ¶ 9.

Kaplan describes Los Jarritos as "two rooms with tables and chairs, a small stage area in one room and a small counter in the back to order to go items." Kaplan Aff., at p. 1. He states further that "TV's are set up in each corner of the rooms and one near the ordering counter," and that "[a] pull down screen was being utilized near the stage area." Id. Kaplan observed round 7 of an undercard fight, presumably on one of the screens he describes though that detail is not specified. Id. Plaintiff owned the rights to distribute those preliminary events. Gagliardi Decl., at ¶ 9. Los Jarritos' capacity was approximately "60+" persons. Kaplan Aff., at p. 2. Three separate headcounts taken during Kaplan's two-minute visit from 7:35 p.m. to 7:37 p.m. yielded 30, 31 and 33 persons.

## III. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55(b), the court may enter default judgment against a defendant who has failed to plead or otherwise defend an action. "The district court's decision whether to enter default judgment is a discretionary one." Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).

The Ninth Circuit has provided seven factors for consideration by the district court to determine whether to enter a default judgment, known commonly as the Eitel factors. They are: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3)

the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of dispute concerning material facts; (6) whether default was due to excusable neglect and; (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  When assessing these factors, all well-pled factual allegations in the complaint are taken as true, except those with regard to damages. Televideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987).

**IV.  DISCUSSION**

**A.  The Eitel Factors**

This court has examined the Eitel factors in several other cases filed by Plaintiff and has found they favor entry of default judgment.  The result is the same here.

As to the first factor, denying Plaintiff's application for default judgment would make little sense since Defendants have refused to respond to this action.  The court would hear and review the same evidence it has before it now if Plaintiff was required to prove up its case at an uncontested trial.  For that reason, Plaintiff would be prejudiced in the form of further delay and expense if the court were to deny the present application.  This factor weighs in favor of default judgment.

As to the second and third factors, Plaintiff's substantive claims appear facially meritorious and the Complaint is sufficient to support a judgment.  Plaintiff has alleged, inter alia, that Defendant violated two sections of Title 47 and the alleged activities of Defendants appear to have violated at least one of those sections.  Additionally, Plaintiff has stated relevant laws pursuant to which the court may provide relief.  These factors also weigh in favor of default judgment.

As to the fourth factor, the sum of money at stake has yet to be determined but the damages cannot exceed the amounts specified in 47 U.S.C. § 553 (as will be explained below), and the maximum amount allowable for the tort of conversion.[1]  Accordingly, statutory damages cannot exceed $10,000 and enhanced damages may not exceed $50,000.  See 47 U.S.C. §

---

[1] Plaintiff also pled a claim under the Unfair Competition Law, California Business and Professions Code § 17200 et seq., but does not seek damages for that claim in this application.

3
Case No.: 5:16-cv-02284-EJD
ORDER GRANTING PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT

553(c)(3)(A)(ii), (B).  Plaintiff is seeking $3,000 in damages for conversion, or the amount Defendant would have been required to pay for the license.  All things considered, the relatively small sum of damages weighs in favor of default judgment.

As to the fifth factor, there is no dispute of material fact.  Indications that there is a dispute of material fact can weigh against entry of default judgment.  See Eitel, 782 F.2d at 1471-72.  But here, Defendants have not disputed any of Plaintiff's contentions since they failed to respond to either the Complaint or this motion, and the material facts pled in the Complaint are basically supported or explained by affidavit or declaration.

For the sixth factor, it is unlikely that default was the result of excusable neglect.  This action was filed approximately seven months ago and the docket reveals that Defendants were noticed through substitute service at Los Jarritos.  In addition, Defendants were served with a copy of the instant motion.  Defendants failed to respond despite these notifications.  This factor, therefore, weighs in favor of default judgment.

Finally, the seventh factor weighs in favor of default judgment because "although federal policy favors decisions on the merits, Rule 55(b)(2) permits entry of default judgment in situations such as this where defendants refuse to litigate."  J & J Sports Prods, Inc. v. Concepcion, No. 10-CV-05092, 2011 U.S. Dist. LEXIS 60607, at *5, 2011 WL 2220101 (N.D. Cal. June 7, 2011).  Thus, the general policy in favor of merits decisions is outweighed by the specific considerations made in this case.  As such, this factor does not prevent entry of default judgment here.

### B. Calculation of Damages

#### i. Statutory Violation

Plaintiff requests $10,000 in statutory damages as a result of an alleged violation of 47 U.S.C. § 605(e)(3)(B)(iii), which prohibits any person from receiving or transmitting "wire or radio" signals except through authorized channels.  47 U.S.C. § 605(a).  More specifically, the statute "'prohibits commercial establishments from intercepting and broadcasting to its patrons satellite cable programming.'"  J & J Sports Prods., Inc. v. Ro, No. 09-CV-02860, 2010 U.S. Dist. LEXIS 21425, at *7, 2010 WL 668065 (N.D. Cal. Feb. 19, 2010) (quoting J & J Sports Prods.,

Inc. v. Sergio Santana Guzman & Besag, Inc., No. 08-CV-05469, 2009 U.S. Dist. LEXIS 32273, at *5, 2009 WL 1034218 (N.D. Cal. Apr. 16, 2009)). The statute provides for statutory damages ranging from $1,000 to $10,000 for each violation. 47 U.S.C. § 605(e)(3)(C)(i)(II).

Plaintiff also mentions another potential basis for relief - 47 U.S.C. § 553(c)(3)(A)(ii) - but does not directly request damages under that statute. Plaintiff did, however, allege that Defendant violated that statute in the Complaint. Section 553 proscribes "a person from 'intercepting or receiving or assisting in intercepting or receiving any communications service offered over a cable system.'" Ro, 2010 U.S. Dist. LEXIS 21425, at *8 (quoting J & J Sports Prods, Inc. v. Manzano, 2008 U.S. Dist. LEXIS 84931, at *5, 2008 WL 4542962 (N.D. Cal. Sept. 29, 2008)). In essence, § 553 prohibits "both illegally receiving cable programming and helping others to illegally receive cable programming." Manzano, 2008 U.S. Dist. LEXIS 84931, at *5. Statutory damages under § 553 range from $250 to a maximum of $10,000, "as the court considers just." 47 U.S.C. § 553(c)(3)(A)(ii).

Sections 605 and 553 are not coextensive because each section prohibits a distinct method of interception. Indeed, "[a] signal pirate violates section 553 if he intercepts a cable signal, he violates section 605 if he intercepts a satellite broadcast." Ro, 2010 U.S. Dist. LEXIS 21425, at *8. "But he cannot violate both by a single act of interception." Id. at *8.

Here, Plaintiff admits that Kaplan was unable to determine the exact means used by Defendants to intercept the Event. In fact, Kaplan makes no comment on the actual means of interception in his affidavit. Under circumstances such as these, this court has found § 553 a more appropriate basis for the calculation of damages. See, e.g., Joe Hand Promotions, Inc. v. Lorenzana, No. 5:13-cv-05925 EJD, 2014 U.S. Dist. LEXIS 110784, at *8-9, 2014 WL 3965097 (N.D. Cal. Aug. 11, 2014); J & J Sports Prods. v. Ocampo, No. 5:15-cv-00982-EJD, 2015 U.S. Dist. LEXIS 126100, at *8 (N.D. Cal. Sept. 20, 2015). This is because a satellite dish, which requires an unobstructed view of the sky, is not easily hidden. A cable box, on the other hand, is easily hidden. On this showing, the court concludes that Defendant must have intercepted the program via a cable signal in violation of § 553 and not § 605.

5
Case No.: 5:16-cv-02284-EJD
ORDER GRANTING PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT

Consistent with its prior orders on this topic, the court awards Plaintiff $250 in statutory damages under § 553.  This amount is appropriate because Plaintiff did little if anything to develop the factual record in support of its default judgment application.  Since Kaplan visited Los Jarritos for only two minutes during the broadcast of the Event, it is understandable why he failed to determine the one critical fact that separates a § 553 violation from a § 605 violation.  In fact, Kaplan's affidavit submitted in this case is particularly unhelpful as it does not reveal which of the three screens actually displayed the Event.  Only the minimum amount of statutory damages is justified on this record.

As to Plaintiff's request under § 553(c)(3)(B), enhanced damages of no more than $50,000 may be warranted if the court finds "that the violation was committed willfully and for purposes of commercial advantage or private financial gain."  The Ninth Circuit has not set forth controlling factors for the determination of when enhanced damages are appropriate in this context, but various factors specific to this unique line of cases have been considered by district courts.  These include the "use of cover charge, increase in food price during programming, presence of advertisement, number of patrons, number of televisions used, and impact of the offender's conduct on the claimant."  Concepcion, 2011 U.S. Dist. LEXIS 60607, at *10.  Enhanced damages have also been awarded when the defendant has violated §§ 605 or 553 on previous occasions. See J & J Sports Prods., Inc. v. Paniagua, No. 10-CV-05141-LHK, 2011 U.S. Dist. LEXIS 33940, at *5-6, 2011 WL 996257 (N.D. Cal. Mar 21, 2011).

In this case, Plaintiff acknowledges that Defendants did not charge a cover to patrons, nor is there any evidence that Defendant increased prices or required food or drink purchases during the Event.  The number of patrons in Los Jarritos during Kaplan's brief investigation was only half of its capacity.  Since there is no evidence that Defendant broadcast the program for any particular commercial advantage or private financial gain, Plaintiff is entitled to $3,000 in enhanced damages, which represents the value of the commercial license to air the program.  This amount properly accounts for the broadcast's impact on Plaintiff and is sufficient deter future conduct by

Defendant and other similarly-situated establishments.[2]

### C. Conversion

Plaintiff requests damages for the tort of conversion in the amount Defendant would have been required to pay for a license, which as noted is $3,000. See Cal. Civ. Code § 3336. "The elements of conversion are: 1) ownership of a right to possession of property; 2) wrongful dissolution of the property right of another; and 3) damages." Paniagua, 2011 U.S. Dist. LEXIS 33940, at *6. Damages for conversion are "based on the value of the property at the time of the conversion." Id.

Here, Plaintiff has shown that it owns the right to distribute the Event and has properly alleged the misappropriation of the right to distribute the program. As to damages, the "value of the property" was the value of the commercial license. Accordingly, the court awards Plaintiff $3,000 in damages for conversion.

## V. ORDER

Based on the foregoing, Plaintiff's application for default judgment (Dkt. No. 25) is GRANTED.

Judgment shall be entered in favor of Plaintiff and against Defendants in the amount of $6,250.00 in total damages. The hearing scheduled for December 1, 2016, is VACATED and the Clerk shall close this file.

**IT IS SO ORDERED.**

Dated: November 28, 2016

_____
EDWARD J. DAVILA
United States District Judge

---

[2] Los Jarritos, and in particular Luis G. Rodriguez, may have violated § 553 previously. See J & J Sports Prods., Inc. v. Rodriguez, No. 5:15-cv-04021-EJD, 2016 U.S. Dist. LEXIS 65069, 2016 WL 2851887 (N.D. Cal. May 16, 2016). However, Plaintiff did not seek enhanced damages against Defendants on that basis. But even if Los Jarritos is a repeat offender, the court would nonetheless find the amount awarded here - an $800 increase over what was ordered in the prior action - is appropriate under those circumstances.